Good morning, and may it please the Court, Kira Klatchko on behalf of the appellant. The case is very interesting because the medical issue here is a rare disease called sickle cell trait, and the record is not extremely complete about what that entails. But what we know is that Mr. Alexander's chief complaint was pain and that the pain was untreated. And what's interesting about pain is it's not something that can often be tested, as we all know, because we're all people. We understand how this response is. I can tell you, for example, that I find it very cold in this room, but I'm talking to someone from Alaska who may feel very differently. I'm always cold, actually, but your analogy is well put. Excellent. It's okay. I feel the same. Well, then you'll understand. I find it very cold, but someone else may find it extremely warm. Our body temperatures are probably still about 98.6 degrees, probably the same. It's our subjective response to the environment. And Mr. Alexander here is talking about pain in response to his environment at a high altitude, and it's not something that can be effectively measured. What do we do about the fact, though, that it's a prison? There's certainly in this particular prison very serious security concerns. Yes. And at some point, if a prisoner has subjective complaints and those have been examined and tested and checked out, at some point they've done what they can do. Well, I'm not sure in this case there's evidence in the record to support that it was checked out. I mean, that's really the issue, the deliberate indifference question, is was Mr. Alexander effectively examined? We have two doctors. Was there a medical opinion? Well, if you look at the statement by the nurse made to Mr. Alexander, that's Nurse Gregerson, the evidence is, and there was no objection to this evidence and no ruling on it, that Nurse Gregerson told Mr. Alexander that he should have been put on a pain regimen. And if you look at the timeline of what happened, I think that shows quite a bit of how Mr. Alexander responded to that advice. He gets to the prison and he's not feeling well. He has a breathing problem. He's ill. He goes to the infirmary. They treat him with antibiotics a couple of times, so they must have thought there was something wrong with him. They wouldn't just casually give those out. And then he's still not feeling well. He's not a doctor. He goes back to the infirmary and at some point talks to the nurse again, and she says, geez, your symptoms and your pain, this seems very consistent with this sickle cell disease. Not sickle cell trait, but with the disease. So in response to that, he gets tested. From her extensive medical training as a doctor? No. Zilch. No, absolutely not. Just an informal comment, right? That's right. But she was ñ nurses are smart and medically trained as well, and she was correct that he had sickle cell trait, which, again, is not the disease. We acknowledge that. But he had something. Counsel, even if we made the hypothetical two different physicians, two different medical opinions, it's still just two different medical opinions, isn't it? Well, no one really treated his pain, and I don't even think that the doctors here opined in their declarations that they attempted to. I think the statement from Dr. Cohn was that he was occasionally treated with ibuprofen. I mean, if I have a headache, I can take as many ibuprofen as I want. He doesn't have access to that sort of thing. He just doesn't. So if you have extreme whole body pain, which, again, is somewhat subjective, I'm saying I don't ñ I'm cold, I am in pain, there's something wrong with me. You have no way to measure that. And, of course, people also are sometimes exaggerate the degree of their pain, and if there's no ostensible medical correlate, one might suspect that it's being overstated, if not falsified. Well, there's no evidence here that he was seeking narcotics or anything. They didn't even put him on a regular regimen of Tylenol or ibuprofen or anything like that. It was the medical records, which are extremely difficult to read, but which the Court has, show that he occasionally got an ibuprofen. Now, if you're in whole body pain, it's really just a question of credibility. That's why I say it's subjective. If you tell me you're cold all the time and I say, I'm the same way, I have no reason to disbelieve you. If you're a prisoner and you say, well, I'm in pain all the time, I might say, they said here, malingerer, get out of the infirmary, I don't believe you. I mean, that's really what it comes down to. Medicine is a science, but it's not exact. What your client was really hoping for was a transfer to a lower elevation prison, not some more ibuprofen or anything like that. Well, I mean, that may be the ultimate end goal, that if it's high elevation is what is exacerbating his condition of what needs to happen. But he didn't, I mean, again, there's no evidence in the record before us that when he was at the other prison, he complained of the same symptoms. No, I recognize that. But I guess what I'm saying is that the most serious concern here that I can understand why your client would have is that he was put at risk for, I don't know, serious medical issues, potentially death, I guess, if, you know, if not treated, and that his view was that he needed to get out of that elevation. And the doctors seemed to do everything that they could in terms of running tests to determine whether, in fact, he was at risk for some serious medical problems and determined that, no, his oxygen levels seemed normal. Well, I would reject the premise of your question a little bit, Your Honor, in the sense that it's not clear that they did every medical test. It sounds more like he went into the doctor complaining. They said, you look fine to us. We've heard that you're fine and maybe you're exercising in your cell. You know, we're not experts, but you're self-diagnosing yourself and you're probably fine, you're a hypochondriac. Hang on. Just let me focus on the test for the oxygen level in the blood. Isn't that the key thing that people are concerned about? I think the key. Because they did run those tests, right? Well, they put a pulse-ox monitor on his finger in the infirmary. That's true. But it's not clear. And again, I don't want to go outside of the record in terms of the medical conditions. But the record shows us there was, I think Judge Watford's right. There was pretty extensive oxygen saturation testing. That's correct. That's correct. But I guess the question is, is the oxygen saturation testing the only indicator of what would show pain in this condition? So here's our problem with that, or I'll just speak for myself. We see cases all the time where there's a medical opinion that gives us X, and then there's subjective complaints of pain that aren't consistent with an individual's activity. And that might be somebody looking for a Social Security disability. It might be, in this case, there's a prisoner alleging that there was deliberate indifference. I mean, in many different contexts, we see that. And of course, we don't play doctor. But those are, that's what, that's why I was trying to focus on the medical opinion. I don't know how you get around that in this case. Yeah. I want to respond, and then I want to make sure to save a little bit of time here. In terms of, I guess I would put it in the context of just a non-prisoner or in another case, as Your Honor references. If you or I went to the doctor, let's say I went into the emergency room and I said, oh, my gosh, I've been sick to my stomach for hours, I have a pain in my abdomen, I have a pain in my arm, I think I'm having a heart attack. I looked on the Internet and it says I could be having a heart attack. They wouldn't kick me out and say, you're a malingerer. They'd say, well, you're probably not having a heart attack. Those are not the symptoms of a heart attack. But let's test you and find out what is going on. And what happens if they test you and they can't find anything? You go home, right? Well, I think they take your complaint seriously and they might say, you know what, we're going to treat you at least with a regular course of ibuprofen or something similar until we see if that affects you. And here, like I said, there's no question that he doesn't have a splenic infarction or whatever he thought that he had. He doesn't have that. But his main complaint really was pain. And maybe he misdiagnosed it in thinking that it was altitude sickness, you know, exacerbating his illness. He's not a doctor either. But he also didn't have access to an expert or to the Internet like you and I would have even WebMD. So I think there needs to be some allowance made for the fact that if you thought something was wrong with you, you would be guessing, too, to figure out what that was. So I want to reserve the balance of my time. Thank you. Sure. Good morning. May it please the Court, my name is Clark Leslie.  It is my privilege to represent the appellees in this case, the Nevada Department of Corrections and Mr. Skolnick. In relation to the questions that this panel posed my honorable opponent, I think that does get to the essence of this case, and that is the question of how do we deal with an inmate who is complaining of subjective complaints, and under what circumstances do we look at the medical testing and provisions that have been provided to the inmate and decide whether there is an Eighth Amendment violation. The sickle cell trait that purportedly is an issue in this case led the inmate to complain of pain and so forth and state that, in his opinion, a lower altitude would alleviate him of his pain. Ely State Prison is at 6,300 feet. Love Lock is somewhat lower. There are at least eight reasons why I think there is reason for great skepticism in terms of what this inmate has been alleging in terms of complaint. And while I recognize and acknowledge that under Rule 56 the credibility of witnesses is usually not questioned, my esteemed opponent, Ms. Klatchko, has cited the Franciscan Ceramics case, which says that if there is an issue involving the individual's credibility, then that individual has a higher responsibility to provide more proof. First, as you'll recall, when he was questioned by Dr. Cohen about the nature and source of his complaint, he pointed to the right upper quadrant of his abdomen, when in fact any splenic infarction that was occurring that would result in a pain would result from the spleen, which is in the lower left quadrant of the body. Secondly, he has what's called sickle cell trait, not sickle cell anemia, which was described by the doctor without disagreement as being vanishingly rare. Third, other inmates at ESP have this form of disease, and they have no such complaints that are either altitude-related or otherwise. Fourth, none of the tests, neither the oxygen saturation nor the persistent oxygen tests that were provided over a long period of time, evidenced any type of a problem. The lowest reading was 94 percent, and given the altitude, that was deemed to be normal. The rest were 95 or higher. Day after day, week after week. What do you say about your opponent's response to that, is that, well, those tests were done, I guess, in the infirmary, which is nicely oxygenated. When you go back to his miserable cell that has no – I don't know what the conditions are. I'm just saying what the argument is. The oxygen level is totally different there, and therefore, we can't rely on those tests. Thank you for asking that, Your Honor. I read that in the brief, and I have too much respect for Ms. Klatchko to believe that she seriously entertained that argument, but I think she was pressed to make that argument by her client. ADCEG cells, DISCEG cells are exactly the same type of cells as any other inmate, except they don't have, to the extent that there are amenities in a prison, anything in them. There's a bed, there's a desk, and there is a toilet. That's it. They can't have a radio, they can't have a TV. They are the same size. They have the same ventilation. They have the same amount of air in them as any other cell, and there's absolutely no evidence to suggest otherwise. And I'm wondering what they are suggesting by that. Is the medical department supposed to bring all of its devices to test this individual in the cell? There is no evidence that there was any difference in the oxygen content in that cell than elsewhere. However, What about her argument that his pain wasn't treated? I mean, not everybody is going to respond the same way to sickle cell trait. I'm sure you would agree with that. What about the argument that this individual says he had pain that wasn't treated? Whenever they tested him to try to find out what type of pain he had, they couldn't find any reason why there would be. And going down my list of the eight reasons why there is an implausibility problem here, two of them involve the fact that he had asymmetrical musculature, which would not be the case if he were suffering from pain. And secondly, when he didn't think anybody was looking, he was exercising very vigorously, doing hundreds of sit-ups and push-ups and pull-ups and working out in the exercise yard. And the record shows that he was granted exercise because of his complaints, and that was done while he was in Unit 4. Do you mean symmetrical musculature, indicating that he wasn't favoring one side? I misspoke, Your Honor. Yes. His musculature was symmetrical, not asymmetrical. Okay. All right. So you would expect to see some imbalance, and there was not. Thank you for pointing that out, Your Honor. Not at all. I just wanted to make it clear. Thank you. And then finally, another interesting event occurred during the course of this case. On November the 3rd, 2011, there was a telephone conference that was held between Mr. Alexander and the magistrate, and this can be found at the excerpts of record, page 27. He was arguing for certain amounts of discovery to be provided. Now, at this point, he had already been transferred from ESP, Ely State Prison, to Lovelock, the very place that he wants to be at a considerably lower level. During his comments, now keep in mind, he had been at Lovelock for over two months when this conversation transpired. He said to the magistrate that he had a complaint of a pain in the right quadrant of his abdomen two months after he had been at the lower elevation. This suggests either he's not telling the truth or the very thing that he wants, and that's the transfer to a lower elevation prison, wouldn't do him any good. It was not going to relieve him from the very complaint that he was making to the doctors at Ely. He can't have it both ways. This is a ---- Why is that having it both ways? It just sounds like the prison officials were continuing not to treat his pain. No. It's evidence that his complaint of right quadrant pain was not alleviated by being transferred to a lower elevation prison. Right. But I think Judge Christen's question was trying to direct you away from the elevation issue and just to a simple pain management issue. He was he's been complaining about pain for months and months, maybe years, and prison The prison is very careful in dispensing with pain medications in the absence of any indicia that there is a reason to do so, and the reasons are obvious. Pain medications are one of the highest valued prison currency in any prison anywhere in the country. They need some reason other than the inmate simply saying, I hurt. Obviously there are going to be conditions where that is very apparent. There are some conditions, I admit, that are subjective in nature and you have to take into account the inmate. This wasn't a complaint about a bad back where there was an x-ray showing that there was some abnormality of the spine. There wasn't any type of a medical indication that any of his organs were injured or there was a musculature problem or anything else. He said, I have sickle cell trait and I have these pains. And so the prison authority said, okay, we're going to run every test we can to establish whether you are telling us the truth. And if we find any reason or any basis to conclude that your sickle cell trait is causing you pain, even though every other inmate in here who has sickle cell trait has no such complaint, we will treat you. But when you run test after test, now let's remember this inmate after two weeks when he wasn't getting the results from the tests that he wanted, he demanded to be released from the infirmary so there wouldn't be a further record of him not having any problems. But when you have no evidence that would substantiate the provision of any type of a pain relief regimen, you cannot do so in a prison. With that in mind, Your Honors, unless you have any further questions, I'll submit on the briefs. I don't think we do. Thank you, counsel. Thank you very much. In my remaining time here, people have pain in limbs that they no longer have. They can't test for that. There's no way to know. You have to either believe the person or not believe them. And the issue here is my client is in prison. He's probably not the nicest person you've ever met. He has issues. And they don't believe him. And that's not a medical decision. They just think he's a malingerer. And so they're not taking him seriously, and they're not giving him what he needs. Medically, I'm not sure you're right. While pain is subjective, it is usually correlated with some objective, determinable problem. So you're feeling a pain in your foot. It's because you have a big bruise there. Now, I admit there are, for example, presumably there are limited objective correlates to the pain that lawyers feel when they appear before judges. But with those rare exceptions, isn't there usually a physical correlate? So they give him every test, and they don't find any physical correlate. Where is the indication that they are being deliberately indifferent in proceeding in that way? You know, Your Honor makes a good point. How do you test, though, again, for pain in a limb you don't have? How do you test for pain connected with fibromyalgia or another condition? There are no tests for many different things. And what they've said here is, well, maybe the altitude is not his problem. Well, maybe it's not his problem. But regardless, he has a problem if he is in pain. And the question here is whether he's credible or not. And that's not something that can be decided or should be decided at this stage. I think the question is whether you can demonstrate deliberate indifference in response to his complaints of pain. What's your strongest argument, given that your time is up, that this demonstrates deliberate indifference? I think the fact that Nurse Gregerson's comment to him was, you should be on a pain regimen, and there are other inmates here who should also be on a pain regimen and are not. And we have to take that at face value. It's, again, it was not objected to. There was no ruling on that particular issue. She's a medical professional. And I would just point out that Snow case. I know I'm out of time. But the same, one of the same doctors who was called in as a second opinion, Dr. Marr, was the doctor in the Snow case. And he said there that a man who needed a hip replacement, I mean, medically necessary hip replacement, had been sitting there for three years, only needed a Tylenol and some analgesic balm. So I think that's the standard we're working on. You're out of time. Thank you for your argument. Thank you so much. Thank you both. Counsel, I think I was remiss in not thanking you for your service. We appreciate it. My pleasure. Thank you.
judges: Rakoff, Christen, Watford